UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joanne Harles-Wilson, | Civil No. 16-cv-02758 (FLN) |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Mac Schneider, for Plaintiff.
Gregory G. Booker, Assistant United States Attorney, for Defendant.

Plaintiff Joanne Harles-Wilson seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. This Court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross-motions for summary judgment. *See* ECF Nos. 12 and 14. For the reasons set forth below, the Commissioner's decision is **REVERSED,** and the case is **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  INTRODUCTION

On December 28, 2011, Harles-Wilson filed concurrent applications for disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Administrative Record [hereinafter "AR"] 242–45, ECF No. 10. Harles-Wilson alleges that she became disabled on September 4, 2014.

*Id*. Harles-Wilson's applications were denied initially on September 24, 2012, and upon reconsideration on April 24, 2013. AR 242–81.

On March 4, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") James Olson. AR 157–203. On March 26, 2014, Harles-Wilson requested a supplemental hearing. AR 673. The supplemental hearing was held on January 20, 2015, before ALJ Gilbert A. Martinez. AR 439. On February 17, 2015, ALJ Martinez denied Harles-Wilson's applications. *See* AR 8–44. On April 21, 2015, Harles-Wilson requested review of the ALJ's denial from the SSA Appeals Council. AR 57. Harles-Wilson submitted new medical records to the Appeals Council. *See* AR 58. On June 17, 2016, the Appeals Council denied Harles-Wilson's request for review, rendering the ALJ's decision final for purposes of judicial review. AR 1–4; *see* 20 C.F.R. § 404.981.

On August 16, 2016, Harles-Wilson commenced this civil action, seeking a determination that she was disabled as of her alleged onset date of September 4, 2010, and an award of disability benefits. ECF No. 1 at 2. On February 20, 2017, the SSA approved Harles-Wilson's reapplication for DIB, and found that Harles-Wilson became disabled on February 18, 2015. ECF No. 19 at 2. As a result, Harles-Wilson now asks the Court to enter an order awarding her DIB from her alleged onset date of September 4, 2010, through February 17, 2015. *Id*.

## II. FINDINGS OF FACTS

**A.     Background**

Harles-Wilson was 41 years old when she filed her applications for DIB and SSI benefits. AR 471. Harles-Wilson graduated from college, and her past relevant work includes employment as a registered nurse. AR 526. Harles-Wilson claimed that the following severe impairments prevented her from securing and maintaining competitive employment: multiple autoimmune

diseases, low back pain, thyroid disease (Hashimotos Disease), adrenal insufficiency (Addison's Disease), Salzmann's nodular degeneration, aortic aneurysm, gastroesophageal reflux disease (GERD), acid reflux, hormone problems, removal of cervix (scare tissue issues), weight gain (40 pounds from steroids), short-term memory problems, and hiatal hernia. *See* AR 525.

### B.   The Administrative Hearing

An administrative hearing was held on March 4, 2015. AR 11–44. Attorney Scott Haider represented Harles-Wilson, who testified on her own behalf. *Id.*

#### 1.   Vocational Expert's Testimony

Vocational expert ("VE") Carly Coughlin testified at the hearing. AR 11. The VE stated that Harles-Wilson's only past work history was employment as a registered nurse. AR 148. The ALJ posed the following hypothetical to the VE:

> assume we have an individual in the national work force that's age 41; has a high school diploma and a bachelor of science degree in nursing in 1996. This individual has past relevant work as a registered nurse. This individual suffers from a combination of impairments. The mental impairments are affective disorder for depression and mood disorder; number two, anxiety-related disorder; number three, a personality disorder, NOS or with borderline features. Now, as far as the physical impairments we have fibromyalgia, obesity, autoimmune disorder, Salzmann's disease, Addison's disease, low back disorder, an artery disorder, gastrointestinal reflux disorder – GERD, sleep apnea. Also in the history, we have a history of alcohol [abuse]. At this time, we're going to find that the alcohol [abuse] is not material to the claim for disability. Okay. If you look at the physical and mental impairments, along with the signs and symptoms, you have the following physical residual functional capacity:
>
> Under Hypothetical No. 1, this person could lift, carry, push, and pull 20 pounds on occasion. This person could lift, push, and pull 10 pounds frequently. Again, 20 pounds occasionally, 10 pounds frequently. There is no requirement for a sit-stand option. This person could sit six total hours of an eight-hour work day. This person could stand six total hours of an eight-hour work day.
>
> Other limitations: Overhead reaching, occasional for the right arm, occasional for the left arm. Reaching shoulder level or below, frequent for the right arm, frequent for the

> left arm. Handling, fingering, and feeling, frequent for the right arm, frequent for the left arm.
>
> Postural limitation: Ability to climb ladders, ropes, and scaffolds, never, can't do it. Ability for walking up and down stairs, climbing stairs could be occasional. Ability for stooping and kneeling would be frequent. Ability for crouching and crawling would be occasional. Ability for balancing one's self would be frequent.
>
> Environmental limitations: This person should avoid even moderate exposure to hazards, such as machinery and unprotected heights. This person should avoid even moderate exposure to operating a motor vehicle because of the mental impairments. There are no hearing limitations, no visual limitations, and no other physical disability limitations.
>
> Now, how do these impairments impact on a person's mental residual functional capacity? They'll be rated as follows: Number one, the person's ability to understand, remember, and carry out job instructions is not limited; two, the person's ability to make judgments and work-related decisions is not impaired. This person can make work-related plans and goals. Number three, the person's ability to respond appropriately to supervision, coworkers, and the public – this person is able to interact with their supervisors and coworkers; however, they should only have brief, and superficial contact with the public. And number four, the person's ability to deal with changes in a routine work setting is unlimited.

AR 148–51. The VE opined that such a hypothetical person would not be able to perform Harles-Wilson's past relevant work as a registered nurse. AR 152. The VE, however, identified regional jobs of office helper and order clerk as jobs this hypothetical person could perform. *Id*. According to the VE, there are 150,000 office helper jobs, and 175,000 order clerk jobs available nationally. *Id.*

### 2. Supplemental Hearing

On March 26, 2014, Harles-Wilson requested a supplemental hearing. AR 673. Towards the end of the hearing, Harles-Wilson requested the ALJ to hold the record open for twenty-one days for submission of new medical records and post-hearing briefs. AR 144. The ALJ granted Harles-Wilson's request, and gave the parties thirty days to submit additional medical records and post-

4

hearing briefs. AR 144, 154. Counsel for Harles-Wilson informed the ALJ that "the plan is to get it done well in advance of that 30 days." AR 144.

**C.     The Commissioner's Decision**

On February 17, 2015, the ALJ issued a decision denying Harles-Wilson's applications for benefits. AR 11–44. In determining that Harles-Wilson was not disabled, the ALJ followed the five-step sequential process established by the SSA. *See* 20 C.F.R. § 404.1520(a)(4).

The first step in the sequential evaluation is to consider the claimant's work history to determine whether he has engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1571 and 416.971. If the claimant has performed substantial gainful activity, she is not disabled. *Id.* At step one, the ALJ found that Harles-Wilson had not engaged in substantial gainful work activity since her alleged disability onset date. AR 13.

The second step in the sequential evaluation is to determine whether the claimant has a severe impairment that significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). At step two, the ALJ found that Harles-Wilson had the following severe impairments: fibromyalgia, obesity, Addison's disease (adrenal insufficiency), Salzmann's nodular degeneration of the cornea, a disorder of the back, an arterial disorder, gastroesophageal reflux disease, alcohol abuse, sleep apnea, depression, anxiety, and a borderline personality disorder. AR 14.

The third step in the sequential evaluation requires the ALJ to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), .1525, .1526, 416.920(d), .925, .926. At step three, the

ALJ determined that Harles-Wilson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1. AR 14–15.

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Functional Capacity ("RFC"). Here, the ALJ concluded that Harles-Wilson had an RFC to:

> perform medium work as defined in 20 CFR 404.1567(b) and 416.9(d). The claimant can lift, carry, push and pull 20 pounds on an occasional basis during an eight-hour workday and 10 pounds on a frequent basis during an eight-hour work day. She can occasionally reach overhead bilaterally and frequently reach in all other directions bilaterally. She can frequently handle, finger and feel. She can occasionally climb ramps and stairs, but never ropes, scaffolds or ladders. She can frequently balance, stoop, and kneel. She can occasionally crouch and crawl. She has no communicative or visual limitations. She should avoid moderate exposure to hazards such as machinery, and unprotected heights. She should avoid moderate vehicle driving. The claimant can understand, remember and carryout detailed instructions, make work-related plans and goals, interact appropriately with supervisors and coworkers, but she should have only brief and superficial interactive contact with the public. She can tolerate changes in a routine work setting.

AR 15–16.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either her past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v). If the ALJ determines that the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* If the claimant cannot perform her past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Harles-Wilson was not able to perform her past relevant work. AR 42. This determination was based on the VE's testimony that an individual with Harles-Wilson's RFC would be unable to perform Harles-Wilson's past relevant work as a registered nurse. *Id*.

At step five, however, the ALJ concluded that considering Harles-Wilson's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that she could perform. AR 42. This determination was based on the VE's testimony, which the ALJ found consistent with the Dictionary of Occupational Titles. AR 42–43.

### III.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial

evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989) (citing *Universal Camera Corp. v. NLRB.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. Therefore, this Court's review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV.  CONCLUSIONS OF LAW

Harles-Wilson argues that the ALJ: (1) failed to hold the record open for thirty-days post-hearing necessitating remand; (2) erred by failing to assess numerous medically determinable impairments as severe or non-serve at step-two of the sequential evaluation process; (3) neglected to evaluate the opinion of Harles-Wilson's treating physician, Dr. Peter Levin; (4) failed to explain the weight given to the conflicting opinions of the state agency and medical expert with regard to Harles-Wilson's ability to feel; (5) misconstrued the opinion of the medical experts and consequently failed to consider Harles-Wilson's pain and mental impairments in combination; (6) violated SSR 06-03p when dismissing the opinion of Harles-Wilson's licensed social worker; and (7) erred in his credibility determination.  *See generally*, ECF No. 13. The Commissioner argues that: (1) the ALJ meticulously evaluated Harles-Wilson's allegations, medical reports, opinions, and testimony,  ECF No. 15 at 1, 5, and 9; (2) that the ALJ's issuance of his decision twenty-eight days after the supplemental hearing was not reversible error, and that Harles-Wilson received her due process, *id.* at 5–6; and (3) the ALJ correctly determined that Harles-Wilson was not disabled, and his conclusions are adequately supported by the record, *Id*. at 4–5.  After a review of the entire record, the Court concludes that the ALJ erred in failing to assign any evidentiary weight to Harles-Wilson's treating physician, Dr. Peter Levin, and erred in failing to consider the factors outlined in SSR 06-03p with regard to the opinion of Harles-Wilson's licensed clinical social worker, Pamela Thompson. For the reasons set forth below, the Court reverses and remands pursuant to sentence four of 42 U.S.C § 405(g).[1]

---

[1]Substantial evidence supports the ALJ's determination with regard to Harles-Wilson's remaining challenges. This Court's review of the ALJ's factual determination is deferential, and it neither re-weighs the evidence, reviews the factual record *de novo*, *see Flynn*, 107 F.3d at 620,

### 1.     Harles-Wilson's Treating Physician, Dr. Peter Levin

Generally, a "treating physician's opinion is entitled to controlling weight," so long as it is "supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (citing *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008)). If, however, the treating physician's opinion "is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate." *Id.* (citing 20 C.F.R. § 416.927(c)). These factors include (i) the examining relationship, (ii) treatment relationship, (iii) supportability, (iv) consistency, (v) specialization, and (vi) other factors. *See* 20 C.F.R. § 416.927(c). Opinions of treating physicians . . . may be given limited weight if they are . . . inconsistent with the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)). Regardless of how much weight the ALJ affords a treating physicians opinion, the ALJ must "always give good reason" for the weight given. 20 C.F.R. § 404.1527(d)2). Failure to provide good reason for discrediting a treating physician's opinion is grounds for remand. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Harles-Wilson argues that the ALJ failed to properly evaluate the opinion of her treating physician, Peter Levins, M.D. *See* ECF No. 13 at 12–14. Specifically, she argues that the opinion of Dr. Levin should be given controlling weight, and that the ALJ's erred in failing to discuss the

---

nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). This Court cannot reverse simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468.

weight accorded to Dr. Levin's opinion**.** *Id*. at 14. The Court finds that the ALJ's failure to assign evidentiary weight to Dr. Levin's opinion is reversible error.

On January 5, 2011, Dr. Levin completed a Report of Illness or Physical Disability for Harles-Wilson. AR 2970. As part of the report, Dr. Levin's notes that Harles-Wilson had been under his care from March 22, 2010, until December 28, 2010. *Id*. Dr. Levin opined that Harles-Wilson could not lift, push, pull, or turn anything. *Id*. Dr. Levin found that it was necessary for Harles-Wilson to take time off work for her treatment or recovery, but that she did not need full-time care during such treatment or recovery. *Id*.

On October 13, 2011, Dr. Levin also submitted an opinion letter for Harles-Wilson. AR 1035–36. In the letter, Dr. Levin stated that Harles-Wilson had been under his care since 2009. AR 1035. He stated that he agreed with the assessment that Harles-Wilson has multiple medical problems. *Id*. He opined that Harles-Wilson has daily and debilitating pain that prevent her from performing the daily activities required of a nurse. *Id*. Dr. Levin stated that Harles-Wilson was unable to do the necessary lifting, transfers, bending, rotational movements, stooping, pushing, and pulling. *Id*. He opined that she requires sedating and potentially impairing medication to assist her in controlling her pain. *Id*. In his opinion, this medication limited her ability to make sound decisions, and put any hospital she was working at in jeopardy with licensing. AR 1035–36. Dr. Levin also stated that he disagreed with Kevin Ladin, M.D., who completed an independent medical evaluation of Harles-Wilson. *Id*; *see also* AR 853–75. Dr. Levin found that Dr. Ladin failed to consider Harles-Wilson's full medical history in rendering his opinion. AR 1036.

In reviewing Dr. Levin's opinion evidence, the ALJ stated:

Peter Levin, M.D., a Diplomate of the American Academy of Family Physicians, issued an opinion letter on October 13, 2011, indicating he had been the claimant's

> primary care physician since 2009, in his opinion Dr. Ladin's opinion failed to consider the claimants entire pain syndrome, and with the entire medical condition being taken into consideration, she was disabled. He indicated two primary impairments, an annular tear at L4-5 and Lupus yet to be determined!

AR 19. The ALJ did not assign any evidentiary weight to Dr. Levin's opinion. *See id.* The only other mention of Dr. Levin's opinion is with regard to the ALJ's discussion of Harles-Wilson's employer's benefit program review; which simply states that her employer reviewed her medical records including letters from Dr. Levin and Dr. Ladin. *See* AR 38.

Dr. Levin is a licensed physician and therefore an acceptable medical source. *See* 20 C.F.R. § 416.913(a)(2). Under the regulations, an acceptable medical source may render "medical opinions," and the ALJ must evaluate every medical opinion he receives. *Id.* § 416.927(a)(2), .927(c). Here, the ALJ only superficially addresses Dr. Levin's opinion, fails to evaluate any of the five factors used to consider how much weigh is appropriate, and fails to assign any evidentiary weight to Dr. Levin's opinion. *See* AR 18. Additionally, the ALJ does not explain whether Dr. Levin's opinion was consistent with the record as a whole, including the opinions of other sources in the record. *Id.* As a result, the Court is left to speculate whether the ALJ gave Dr. Levin's opinion some weight, little weight, or no weight at all. Without knowing how much weight the ALJ gave Dr. Levin's opinion, the Court cannot determine whether substantial evidence exists in the record to support the ALJ's determination. *See, e.g.*, *Dewald v. Astrue*, 590 F. Supp. 2d 1184, 1201 (D. S.D. 2008).

Although good reasons for discrediting Dr. Levin's opinion may exist, the ALJ's decision fails to assign any evidentiary weight to Dr. Levin's opinion, and the Court declines to attempt to infer what weight, if any, was given to Dr. Levin's opinion. Thus, we find the ALJ's failure to

properly evaluate Dr. Levin's opinion is reversible error, and remand for the ALJ to thoroughly explain the weight given to Dr. Levin's opinion, taking into account the entire record as a whole, including the opinions of all relevant medical professionals who have treated and/or examined Harles-Wilson.

### 2. Licensed Clinical Social Worker Pam Thompson

Harles-Wilson argues that the ALJ's dismissal of Pam Thompson, a licensed clinical social worker, violates SSR 06-03p. *See* ECF No. 18–19. The ALJ in his decision notes that Ms. Thompson, on January 5, 2015, completed a mental residual functional capacity questionnaire regarding Harles-Wilson. AR 38. In the questionnaire, Ms. Thompson comments that Harles-Wilson was one of the most difficult persons she had ever worked; that Harles-Wilson was self-absorbed to the point of seeming delusional; and that Harles-Wilson's reported symptoms and illnesses were close to being paranoia and exhibiting hypochondria. AR 39. The ALJ agreed with Ms. Thompson's analysis, but found that because she was not an acceptable medical source, that her opinion would only be given partial weight. *Id*.

The Social Security Regulations distinguish "acceptable medical sources" from "other medical sources[,]" which include nurse-practitioners, physicians' assistants, and license clinical social worker. 20 C.F.R. § 404.1513(d)(1)-(4); *see also* SSR 06-03p. While evidence provided by "other" medical sources "cannot establish the existence of a medically determinable impairment," once a medically determinable impairment is established, information from "other sources" may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p; *See e.g.*, *Sloan v. Astrue*, 499 F.3d 883, 888-89 (8th Cir. 2007). In so doing, the ALJ may consider, how frequent the source has seen the individual, how consistent the opinion

13

is with other evidence, how well the source explains the opinion, and whether the source has a speciality or area of expertise related to the individual's impairments. SSR 06-03p. "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citing 20 C.F.R. § 416.927(d)(4)).

Because the ALJ gave Ms. Thompson's opinion partial weight based wholly on the fact that she is not an acceptable medical sources, without considering any of the factors outlined in SSR 06-03p, the Court finds that the ALJ committed reversible error. On remand, the ALJ is directed to consider all the factors found in SSR 06-03p in weighing Ms. Thompson's opinion.

## V.  CONCLUSION

As outlined above, the Court concludes that substantial evidence does not support the ALJ's RFC determination. The Court specifically notes, however, that it makes no findings as to if and/or how these errors affected the ALJ's ultimate conclusion that Harles-Wilson is not entitled to disability benefits. On remand, the ALJ must fully consider the limitations described by Harles-Wilson's treating physician, and explicitly explain the weight given to his opinions. If the ALJ disagrees with those limitations, he must provide specific, detailed reasons for doing so. The ALJ must also consider the factors outlined in SSR 06-03p with regard to Ms. Thompson's opinion.

## IV. ORDER

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **GRANTED**, **in part**.

2. Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**;

3.	The Commissioner's decision is **REVERSED** and the case is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 28, 2018                         <u>*s/Franklin L. Noel*</u>
                                                                          FRANKLIN L. NOEL
                                                                          United States Magistrate Judge